### Ex parte KEISUKI SATA et al.

(District Court, N. D. California, First Division. June 20, 1914.)

No. 15592.

1. ALIENS (§ 54*)—IMMIGRATION—EXCLUSION—DEPORTATION PROCEEDINGS—HEARING—EVIDENCE.

Evidence on which a warrant of arrest in deportation proceedings is issued may not be considered as evidence on subsequent hearings, unless it is called to the alien's attention and he has been given an opportunity to meet it.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. ALIENS (§ 54*)—DEPORTATION—FAIR HEARING.

While the courts are not authorized to interfere with an order of deportation made after a fair hearing, though the evidence on which the order is based is slight, if there is any evidence whatever to support it, yet, where the alien has not been accorded a fair hearing within the meaning of the law, it is the court's duty to intervene.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

3. ALIENS (§ 54*)—DEPORTATION—FAIR HEARING.

Where the most important evidence against an alien in proceedings to deport him because he was afflicted with a contagious disease consisted of a letter written by a hospital surgeon, a hearing at which the alien was not confronted with such letter and had no opportunity to controvert the statements made therein was an unfair one, and insufficient to sustain an order of deportation.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig.· § 54.*]

4. ALIENS (§ 54*)—DEPORTATION PROCEEDINGS—WARRANT OF ARREST—EVIDENCE.

Where a warrant in deportation proceedings provided that it should operate to cancel a previous warrant issued in the case June 5, 1913, the alien was under no obligation to search the record on which such prior warrant was issued in order to find evidence to be used against him in support of the present proceeding.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

5. ALIENS (§ 54*)—DEPORTATION—GROUNDS.

Though an alien arrested on one charge may be deported for any reason which may develop in the course of the proceedings, this can only be done when he has been advised of the new charge or charges, and been given an opportunity to meet them.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

Habeas corpus by Keisuki Sata and others to obtain discharge from custody under a deportation warrant. Writ granted, and petitioners discharged.

Marshall B. Woodworth, of San Francisco, Cal., for petitioner.

John W. Preston, U. S. Atty., and Walter E. Hettman, Asst. U. S. Atty., both of San Francisco, Cal., for respondent.

DOOLING, District Judge. In view of certain references made in the briefs herein, it may not be amiss to state that in the determination of cases on habeas corpus, as in all other cases, the court can only act upon the record and the facts presented to it. The only record presented to the court upon the hearing of the present case was the petition, the return, the traverse to the return, and the copy of an unsigned letter, which is as follows:

"Department of Commerce and Labor.

"Immigration Service.

"1048/604

"Medical Division, Angel Island Station, via Ferry Post Office, San Francisco, Cal.,

"August 19, 1913.

"The Commissioner of Immigration, Angel Island, California—Sir: Replying to your request for my opinion as to whether or not Keisuki Sata was

afflicted with Syphilis at the time of his entry into the United States, I beg to state that this man was admitted to the hospital on May 30th with syphilistic symptoms which he said had been manifest for the last 3 weeks. There was nothing in connection with the symptoms which would lead me to suppose that the man was not telling the truth and allowing that he was truthful that would make the first manifestation of his disease apparent on May 9th. The usual incubation stage of syphilis, by incubation stage I mean the time elapsing between the time of contracting the disease and the time of symptoms manifesting themselves, is from 3 to 6 weeks. As this alien landed from his ship on April 24th it will be seen that at the time of landing he might have had no obvious symptoms and still have the disease. This is what I believe to have been the case. As to whether or not the disease was contracted on board the vessel while en route or whether just before leaving Japan it would be impossible for me to say because I do not know the definite period of incubation in this particular man.

"Respectfully,

"WCB/CLA. Surgeon, P. H. S."

It appears from the petition and proofs presented that petitioner Keisuki Sata was arrested by virtue of a warrant dated August 28, 1913, charging him with being illegally in the country for the reason that:

"He is an alien and a member of the excluded classes in that he was afflicted with syphilis, a dangerous contagious disease, at the time of his entry into the United States."

The warrant contains this further statement:

"This will serve to cancel warrant of arrest issued in the case on June 5, 1913."

Upon this charge he was arraigned and examined on September 5, 1913, the only testimony taken concerning the matter set forth in the warrant being the testimony of the petitioner himself, unless indeed the letter above quoted may be regarded as evidence supporting the order of deportation finally entered. Of this letter mention will later be made. From the testimony of petitioner taken September 5, 1913, it appears that he left Kobe, Japan, on April 5, 1913, and landed at Seattle April 24th, where he was examined before landing, and found to be free from disease; that some time after his arrival in this country, not definitely fixed, symptoms of syphilis were developed, but that at the time of his testifying he was wholly cured; that he did not have the disease at all until he was in this country, and that he thought it had developed in him too long after the only occasion when he might have contracted it abroad, which occasion was on March 27th, to be the result thereof. It also appears from his affidavit, made on September 22d, that after his arrival here there were three occasions upon which he might have contracted the disease in question. This is all the evidence, exclusive of the letter already quoted, which bears upon the charge contained in the warrant of arrest. If the letter be regarded as evidence in support of the order of deportation, it is claimed by petitioner that the hearing accorded him by the immigration department was unfair for the reason that he had no knowledge of the existence of such letter until it was offered in evidence in this court, and therefore had no opportunity to controvert the statements therein contained. Who the author of this letter is

does not appear in the evidence, but it will be observed that it antedates the warrant by nine days, and is important in view of the testimony of petitioner above set forth.

[1] Passing the question as to whether the evidence upon which a warrant of arrest is issued in cases of deportation may be considered as evidence also upon the subsequent hearings, it is clear that it cannot be so considered, unless it is called to the attention of the alien and he is given an opportunity to meet it. Letters passing between the various officers of the immigration service are generally held by themselves to be confidential, and we are frequently confronted in court by such communications, which the alien has never theretofore seen. The proceedings upon which an alien is denied a landing, as well as those upon which he is deported, are very summary in character, and the courts have gone far in upholding them. The following principles seem to be well established:

[2-4] The courts are not authorized to interfere with an order of deportation made after a fair hearing, even though the evidence be slight upon which the order is based, if there be any evidence whatever to support it. But it has been uniformly held that where the petitioner has not been accorded a fair hearing within the meaning of the law, it is the duty of the courts to intervene. In the present case if the letter be regarded as evidence used upon the hearing of the charge specified in the warrant of August 28th, then such hearing was in law an unfair one, because petitioner was never confronted with it, and had no opportunity to controvert the statements which are made therein. As the letter was offered in evidence by the respondent upon the hearing of this petition in support of the order of deportation, and of his return, the court must assume that it was so offered because it had been considered by the secretary as part of the evidence upon which he based his finding that petitioner was afflicted with a dangerous contagious disease at the time of his entry into the United States. Something has been said in the briefs concerning a prior hearing, of which no evidence has been presented. If this letter constituted a part of the record of such prior hearing, then manifestly petitioner would not be under any obligation to search such record to find the evidence to be used against him on the present charge, as the warrant itself declared:

"This will serve to cancel warrant of arrest issued in the case on June 5, 1913."

With this declaration of the secretary before him, and upon which he was entitled to rely, it cannot now be urged that, when he was informed that he was entitled "to see all the evidence on which the secretary has acted in issuing his warrant of arrest," he should have searched the proceedings had upon the canceled warrant in order to ascertain the basis for the new one. The letter in question, so far as appears, was the most important evidence against petitioner upon the charge specified in the warrant, and, taken in connection with his own testimony, might well be held sufficient upon which to base the finding of the secretary. For this reason it was very essential to petitioner's defense that he be apprised of its existence and intended

use, so that he might have an opportunity to controvert its statements. Such opportunity was not given him, unless it be held to have been given him, as contended by respondent, by the statement that he was entitled to see all the evidence on which the secretary had acted in issuing his warrant of arrest. But it does not even appear that this letter was at that time a part of the files of the local office and accessible to petitioner even in the record of the prior hearing spoken of in the briefs, and, if it were, I am satisfied, for the reasons given above, that he was under no obligation to search such prior record, the warrant for which had been already canceled. The order of deportation, as is set forth therein, is issued upon the following grounds:

"That the said alien is a member of the excluded classes in that he was afflicted with syphilis, a dangerous contagious disease, and was a person likely to become a public charge at the time of his entry into the United States,' and that he is unlawfully within the United States in that he secured admission by means of false and misleading statements, thereby entering without inspection."

[5] It is quite true that an alien arrested on one charge may be deported for any reason which may develop in the course of the proceedings, but before this can be done he must be advised of the new charge or charges, and be given an opportunity to meet them. Nothing of that kind appears here. Just what preceded the issuance of the warrant of August 28, 1913, is not apparent to the court, but it _is_ apparent that a previous warrant had been canceled. It is doubtless true that the secretary may, upon reconsideration, adopt a different view from that which he has already expressed, but if he do so, I think the alien should have some suggestion of such change, so that he may not be lulled into a fancied security that he is being examined on one charge, when it is really intended to order his deportation upon another. It is only proper to state that whatever is said herein is based solely upon the record as presented in court. This statement is made because the briefs have taken a somewhat wider range, and deal with matters concerning which the court has no information aside from the references therein contained.

As to the wife and child of petitioner, also ordered deported, it is sufficient to say that no evidence whatever appears against them.

For the reasons herein stated, the petitioners are ordered discharged.